CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

EILEEN AVILES, individually, and on behalf of all others similarly situated,

        Plaintiff,

        v.

HAWAIIAN HOST, LLC,

        Defendant.

Case No.

**CLASS ACTION COMPLAINT**

<u>DEMAND FOR JURY TRIAL</u>

CROSNER LEGAL, P.C.

**INTRODUCTION**

1.    Plaintiff Eileen Aviles ("Plaintiff") brings this consumer protection class action against Hawaiian Host, LLC ("Defendant") to remedy a systematic and fraudulent scheme involving the deceptive marketing and sale of chocolate-covered macadamia nut confections.

2.    Defendant maintains that it is the largest manufacturer of chocolate-covered macadamias in the world and controls about 80% of the macadamia nut processing capacity in the State of Hawaiʻi. Utilizing this dominant market position, Defendant induces consumers into paying a significant price premium for confections that are deceptively branded as authentic products of Hawaiʻi.

3.    For over a century, Hawaiʻi-grown macadamia nuts have been recognized globally as a premium agricultural commodity, prized for a unique creamy, buttery texture derived from the Islands' volcanic soil and subtropical growing conditions.  Defendant capitalizes on this reputation by adorning the packaging of its Hawaiian Host brand Products ("the Products")[1] with iconic Hawaiian landscapes, cultural symbols, and affirmative geographic slogans—such as "Genuine," "Original," and "Made with Aloha,"— to create the unambiguous impression that the primary ingredient is sourced from Hawaiʻi.

4.    In reality, Defendant's products sold on the "mainland," including in California, are comprised of cheaper, foreign-grown macadamia nuts imported for pennies on the dollar from regions such as South Africa and Australia. Defendant's CEO, Ed Schultz, recently admitted that the volume of nuts required for their global distribution "exceeds what [they] can source from [their] own local orchards or other high-quality growers in Hawaiʻi" and explicitly confirmed that these imported nuts are "primarily used in Hawaiian Host products manufactured and sold on the mainland."[2]

---

[1] The Products include all Hawaiian Host brand products that contain macadamia nuts as an ingredient.

[2] Ryann Noelani Coules, *Not Grown in Hawaiʻi,* HAWAII BUSINESS MAGAZINE (May 20, 2025), *available at* https://www.hawaiibusiness.com/not-grown-in-hawaii/ A copy of this article is also attached as **Exhibit A** to this complaint.

5.      Despite this reliance on foreign macadamia nuts for its California consumers, Defendant utilizes crafty marketing terms such as "AlohaMacs" and "It truly is Hawaiʻi's Gift to the World" to reinforce the Hawaiian identity of its primary ingredient without disclosing the foreign source. Plaintiff and the proposed Class sought to purchase authentic Hawaiian confections but were instead misled by Defendant's deceptive branding into subsidizing a global supply chain of foreign nuts while paying Hawaiʻi-level prices.

6.      Plaintiff seeks to represent a California class of consumers for Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this judicial district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California,

CROSNER LEGAL, P.C.

Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Plaintiff purchased one of the Products within this District.

### PARTIES

10.      Defendant Hawaiian Host, LLC is a Hawai'i limited liability company that maintains its principal place of business in Honolulu, Hawai'i. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products.

11.      Plaintiff Eileen Aviles is a resident of California. Plaintiff purchased one of the Products during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims as set forth below.

### FACTUAL ALLEGATIONS

**A.  Defendant's Packaging Represents to Consumers that the Macadamia Nuts are Sourced from Hawai'i**

12.      Defendant intentionally utilizes Hawaiian branding, iconic geographic imagery, and affirmative slogans of origin to induce reasonable consumers into believing that its macadamia nut products are sourced 100% from Hawai'i orchards.

13.      As shown in the image below, the front label of Defendant's "AlohaMacs" packaging features a collage of imagery inextricably linked to the State of Hawai'i, including a specific depiction of the Diamond Head landmark, a breaking ocean wave, tropical hibiscus flowers, and a woman in traditional Hawaiian attire wearing a floral lei.

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12



13    14.    This geographic indicia is reinforced by prominent, affirmative representations
14  of authenticity and origin. The front label features the brand name "Hawaiian Host" and the
15  product name "ALOHAMACS," both of which use "Hawaiian" and "Aloha" as adjectives to
16  modify the product, creating an immediate and affirmative representation of geographic origin.
17  Such descriptive brand names require little thought from the consumer and create a nearly
18  insurmountable assumption of geographic source.

19    15.    Further, the packaging features a circular gold seal stating: "THE ORIGINAL
20  GIFT OF ALOHA". Below the brand name, the label provides a specific historical promise:
21  "OVER 80 YEARS OF GENUINE. CLASSIC. ORIGINAL.". These slogans function as factual
22  assertions that the product conforms to the original standards of the brand—specifically, the use
23  of authentic Hawaiʻi-grown nuts.

24    16.    As shown in the image below, the back of the packaging contains a detailed
25  narrative that emphasizes the product's local heritage, stating that the founder's "magical recipe
26  for chocolate-dipped macadamias created a sensation on his home island of Maui" and that he
27  later moved to Honolulu to fill orders "all over Oʻahu".

28

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12



13    17.    The back label narrative explicitly distinguishes Defendant's products from those
14 of competitors by claiming: "This is real Hawaiian Host - Genuine. Classic. Original. It truly is
15 Hawai'i's Gift to the World."

16    18.    Finally, Defendant includes an "Our Promise to You" section which states that
17 "Hawaiian Host products are made with aloha".

18    19.    Taken as a whole, the entire mosaic of the packaging—from the Diamond Head
19 imagery to the repeated use of "Genuine," "Hawaiian," and "Aloha"—leads a reasonable
20 consumer to the unambiguous conclusion that the macadamia nuts contained within the package
21 are sourced from Hawai'i. Consumers are not expected to look beyond these pervasive
22 representations to discover the truth: that the primary ingredient for mainland and international
23 distribution is frequently a cheaper, foreign-grown import from Africa or Australia.

24    20.    The representations and images on the packaging of the Products are hereinafter
25 referred to as "the false Hawaiian origin claims."

26
27
28

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

**B. Consumers Pay a Premium for Hawaiʻi-Grown Macadamia Nuts**

21.    Macadamia nuts are a specialty agricultural commodity inextricably linked to the cultural identity and agricultural reputation of the State of Hawaiʻi. While indigenous to Australia, the commercial macadamia industry was pioneered and developed in Hawaiʻi starting in the late 19th century.[3] Over more than a century of research and cultivation, Hawaiʻi established itself as the global benchmark for quality, historically producing approximately 95% of the world's macadamia kernel.[4]

22.    Hawaiʻi-grown macadamia nuts are recognized by consumers and agricultural scientists alike as a premium product, primarily due to the unique "creamy, buttery texture" resulting from the Islands' volcanic soil and subtropical growing conditions.[5] The specific environmental factors in Hawaiʻi—including pure water furthest from any continent and nutrient-rich volcanic soil—produce a kernel with a high oil content (often 66% or more) and a flavor profile that is distinctive and superior to nuts grown in other geographic regions, such as Africa or Australia.[6]

23.    The superiority of Hawaiʻi macadamias is further ensured by decades of intensive selective breeding conducted by the University of Hawaiʻi and the Hawaiʻi Agricultural Experiment Station. These programs developed specific Macadamia integrifolia cultivars—given Hawaiian names like 'Keauhou', 'Nuuanu', and 'Keaau' to associate them with their local origin—that produce kernels of consistent high quality, uniform size, and full flavor.[7]

---

[3] *See* Gordon T. Shigeura & Hiroshi Ooka, *Macadamia Nuts in Hawaii: History and Production*, UNIV. HAW. RESEARCH EXTENSION SERIES 039, 6, 11 (1984), *available at* https://www.ctahr.hawaii.edu/oc/freepubs/pdf/res-039.pdf

[4] *See* David Rietow, *A Hard Nut to Crack: Macadamia in Hawaii*, 47(10) HORTSCIENCE 1405, 1407 (2012), *available at* https://journals.ashs.org/hort/hort/published/rest/pdf-watermark/v1/journals/hortsci/47/10/article-p1405.pdf/watermark-pdf/

[5] Coules, *supra*.

[6] *See* Shigeura & Ooka, supra, at 17, 21, 23.

[7] *See* Shigeura & Ooka, *supra*, at 19; J.T. Keeler & E.T. Fukunaga, *The Economic and Horticultural Aspects of Growing Macadamia Nuts Commercially in Hawaii*, UNIV. HAW. AGRIC. ECON. BULL. No. 27, 5 (1968).

CLASS ACTION COMPLAINT

24. Because of this reputation for unmatched quality and authentic heritage, Hawaiʻi-grown macadamia nuts command a significant price premium on the retail market.[8] Consumers routinely pay substantially higher prices for authentic "Made in Hawaiʻi" confections than they do for other specialty nuts like almonds or walnuts, or for macadamias sourced from foreign producers.[9] For many visitors and residents, these nuts represent an iconic "gift of aloha" and a "gift to the world," making the geographic origin of the nuts a material factor in their purchasing decisions.[10]

**C. Defendant Knowingly Substitutes Premium Hawaiʻi Macadamia Nuts with Inferior Foreign Nuts While Charging Mainland Consumers a "Hawaiʻi Premium"**

25. To maximize corporate profits at the expense of mainland consumers, Defendant has knowingly engaged in a systematic practice of substituting premium Hawaiʻi-grown nuts with cheaper, foreign-sourced kernels for products distributed in California. While Defendant utilizes authentic local nuts for a portion of its sales within the State of Hawaiʻi, it reserves inferior, foreign nuts for the "flood" of products destined for the mainland. Defendant's President and CEO, Ed Schultz, explicitly admitted this bifurcation in its supply chain, stating that "imported nuts are primarily used in Hawaiian Host products manufactured and sold on the mainland."[11]

26. The economic incentive driving this deceptive substitution is significant, as foreign-grown macadamia nuts can be purchased for "pennies on the dollar" compared to the cost of production for authentic Hawaiʻi-grown nuts. By failing to disclose this foreign origin to California consumers, Defendant extracts an unearned "Hawaiʻi premium" while utilizing a low-cost, globalized supply chain. In 2024 alone, Defendant imported approximately 1.5 million kernel pounds of foreign nuts—representing roughly 30% of the entire annual production of the

---

[8] *See* Coules, *supra*.

[9] *See* Shigeura & Ooka, *supra*, at 22.

[10] *See* Coules, *supra*.

[11] *Id.*

CROSNER LEGAL, P.C.

State of Hawai'i—yet continued to market these products under the "Hawaiian Host" brand without qualification.[12]

27. The foreign kernels Defendant imports from regions such as South Africa and Australia frequently suffer from quality and freshness issues that are not present in locally sourced nuts. These imported nuts often spend "extended periods" in storage and transport before being raw-processed and pasteurized in Hawai'i, creating uncertainties regarding food safety and ethical labor practices. This practice not only deceives the consumer but also taints the quality and global perception of authentic Hawai'i macadamias.[13]

28. Defendant further leverages its monopolistic market position to facilitate this deceptive sourcing, as it owns and controls approximately 80% of the macadamia nut processing capacity in Hawai'i. In 2022, Defendant shut down the Kea'au nut cracking facility—the largest in the state—claiming it no longer met environmental standards. This shutdown systematically reduced the ability of independent local farmers to process their nuts, forcing many to sell at a loss or go out of business. Defendant then utilized this self-created "lack of capacity" as a pretext to increase its reliance on cheaper foreign imports while maintaining its deceptive "Hawaiian" branding for the California market.[14]

29. Despite these admitted sourcing practices, Defendant continues to utilize identical "Hawaiian Host" and "AlohaMacs" packaging for its mainland confections, ensuring that reasonable consumers remain unaware that the macadamia nuts are actually a foreign import. This intentional omission constitutes a material misrepresentation that directly induces consumers to pay a premium price they would not otherwise pay for an inferior product.

---

[12] See Coules, *supra*; Rietow, *supra* at 1407.

[13] See Coules, *supra*.

[14] *Id.*

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE HAWAIIAN ORIGIN CLAIMS AND SUFFERED ECONOMIC INJURY

30.     Consumers, like Plaintiff, relied on Defendant's false Hawaiian origin claims when purchasing the Products. The false Hawaiian origin claims on the labels of the Products are material to reasonable consumers. Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the truth about Defendant's false Hawaiian origin claims.

PLAINTIFF'S PURCHASE OF THE PRODUCTS

31.     Plaintiff Eileen Aviles has purchased the Products, including the milk chocolate ALOHAMACS and MACNUT Crunch Products, from retail stores located in or around Suisun City, California during the class period. Plaintiff saw and relied on the false Hawaiian origin claims on the labels of the Product. Plaintiff would not have purchased the Products, or would have paid less for the Products, had she known that the Products actually contained foreign macadamia nuts. As a result, Plaintiff suffered injury in fact when she spent money to purchase the Product she would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff desires to purchase the Product again if the labels of the products were accurate and if the macadamia nuts in the Products were fully sourced from Hawai'i. However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

NO ADEQUATE REMEDY AT LAW

32.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

33.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

34.     A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products with the false Hawaiian origin claims when the Products actually contain foreign macadamia nuts. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the macadamia nuts in the Products are actually from foreign sources. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

CROSNER LEGAL, P.C.

35.     It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

**CLASS ACTION ALLEGATIONS**

36.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

All persons who purchased the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

37.     Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

38.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

39.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

CROSNER LEGAL, P.C.

1    40.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is

2    impracticable. Plaintiff believes that there are thousands of consumers who are Class Members

3    described above who have been damaged by Defendant's deceptive and misleading practices.

4    41.    <u>Commonality</u>: There is a well-defined community of interest in the common

5    questions of law and fact affecting all Class Members. The questions of law and fact common

6    to the Class Members which predominate over any questions which may affect individual Class

7    Members include, but are not limited to:

8    a.    Whether Defendant is responsible for the conduct alleged herein which was

9    uniformly directed at all consumers who purchased the Products;

10    b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that

11    Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the

12    advertising, marketing, and sale of the Products;

13    c.    Whether Defendant made misrepresentations concerning the Products that were

14    likely to deceive the public;

15    d.    Whether Plaintiff and the Class are entitled to injunctive relief;

16    e.    Whether Plaintiff and the Class are entitled to money damages and/or restitution

17    under the same causes of action as the other Class Members.

18    42.    <u>Typicality</u>: Plaintiff is a member of the Class that Plaintiff seeks to represent.

19    Plaintiff's claims are typical of the claims of each Class Member in that every member of the

20    Class was susceptible to the same deceptive, misleading conduct and purchased the Products.

21    Plaintiff is entitled to relief under the same causes of action as the other Class Members.

22    43.    <u>Adequacy</u>: Plaintiff is an adequate Class representative because Plaintiff's

23    interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the

24    consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong

25    interest in vindicating the rights of the class; Plaintiff has retained counsel competent and

26    experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this

27    action. Plaintiff has no interests which conflict with those of the Class. The Class Members'

28    interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel.

CROSNER LEGAL, P.C.

Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

44.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

45.    Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

CROSNER LEGAL, P.C.

1    46.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on

2    behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent

3    Defendant from engaging in the acts described, and to require Defendant to provide full

4    restitution to Plaintiff and the Class members.

5    47.    Unless the Class is certified, Defendant will retain monies that were taken from

6    Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide

7    injunction is issued, Defendant will continue to commit the violations alleged and the members

8    of the Class and the general public will continue to be misled.

9    **FIRST CLAIM FOR RELIEF**

10    **Violation of California's Consumers Legal Remedies Act**

11    **Cal. Civ. Code § 1750 *et seq.***

12    48.    Plaintiff realleges and incorporates by reference all allegations contained in this

13    complaint, as though fully set forth herein.

14    49.    Plaintiff brings this claim under the CLRA individually and on behalf of the Class

15    against Defendant.

16    50.    At all times relevant hereto, Plaintiff and the members of the Class were

17    "consumer[s]," as defined in California Civil Code section 1761(d).

18    51.    At all relevant times, Defendant was a "person," as defined in California Civil

19    Code section 1761(c).

20    52.    At all relevant times, the Products manufactured, marketed, advertised, and sold

21    by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

22    53.    The purchases of the Products by Plaintiff and the members of the Class were

23    and are "transactions" within the meaning of California Civil Code section 1761(e).

24    54.    Defendant disseminated, or caused to be disseminated, through its advertising,

25    false Hawaiian origin claims, including the Products' labeling that the Products contain

26    macadamia nuts sourced from  Hawaiʻi. Defendant failed to disclose that the Products contain

27    macadamia nuts from foreign sources. This is a material misrepresentation and omission as

28    reasonable consumer would find the fact that the Products contain foreign macadamia nuts to be

CROSNER LEGAL, P.C.

important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a) Defendant misrepresented the source, sponsorship, approval, or certification of the Products (Cal. Civ. Code § 1770(a)(2);

b) Defendant used "deceptive representations or designations of geographic origin in connection" with the sale of the Products (Cal. Civ. Code § 1770(a)(4);

c) Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

d) Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

e) Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

f) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

55. Defendant violated the CLRA because the Products were prominently advertised with the false Hawaiian origin claims, but, in reality, the Products contain macadamia nuts from foreign sources. Defendant knew or should have known that consumers would want to know that the Products contain macadamia nuts from foreign sources.

56. Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

57. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

58. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

59. Pursuant to California Civil Code section 1782, Plaintiff will notify Defendant in writing by certified mail of the alleged violations of the CLRA and demand that Defendant

15

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1    rectify the problems associated with the actions detailed above and give notice to all affected

2    consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems

3    associated with the actions detailed herein and give notice to all affected consumers within 30

4    days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiff will

5    amend this Complaint to seek damages pursuant to the CLRA.

6        60.    Pursuant to section 1780(d) of the CLRA, attached hereto is an affidavit showing

7    that this action was commenced in a proper forum.

8                            **SECOND CLAIM FOR RELIEF**

9                **Violation of California's Unfair Competition Law**

10                **Cal. Bus. & Prof. Code § 17200 *et seq.***

11       61.    Plaintiff realleges and incorporates by reference all allegations contained in this

12   complaint, as though fully set forth herein.

13       62.    Plaintiff brings this claim under the UCL individually and on behalf of the Class

14   against Defendant.

15       63.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or

16   practice and any false or misleading advertising.

17       64.    Defendant committed unlawful business acts or practices by making the

18   representations and omitted material facts (which constitutes advertising within the meaning of

19   California Business & Professions Code section 17200), as set forth more fully herein, and by

20   violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*,

21   California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by

22   breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class

23   members, reserves the right to allege other violations of law, which constitute other unlawful

24   business acts or practices. Such conduct is ongoing and continues to this date.

25       65.    Defendant committed "unfair" business acts or practices by: (1) engaging in

26   conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members

27   of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or

28   substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct

16

that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain macadamia nuts from foreign sources) of which they had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

66.     Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products contain macadamia nuts not from foreign sources.

67.     Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

68.     Defendant's wrongful business practices and violations of the UCL are ongoing.

69.     Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

70.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such

CROSNER LEGAL, P.C.

17

practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### REQUEST FOR RELIEF

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

e.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

f.      Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

CROSNER LEGAL, P.C.

18

CLASS ACTION COMPLAINT

1     Dated: February 26, 2026                    CROSNER LEGAL, P.C.

2

3                                                  By:      /s/ Michael T. Houchin
                                                            MICHAEL T. HOUCHIN
4
                                                   9440 Santa Monica Blvd. Suite 301
5                                                  Beverly Hills, CA 90210
                                                   Tel: (866) 276-7637
6                                                  Fax: (310) 510-6429
                                                   mhouchin@crosnerlegal.com
7
8                                                  *Attorneys for Plaintiff and the Proposed Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**Affidavit Pursuant to Civil Code Section 1780(d)**

I, MICHAEL T. HOUCHIN, declare as follows:

1.      I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2.      This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3.      Defendant has done, and is doing, business in California, including in this judicial district. Such business includes the marketing, promotion, distribution, and sale of the Products within the State of California.


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed February 26, 2026 at San Diego, California.


CROSNER LEGAL, P.C.


By:      */s/ Michael T. Houchin*
          MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT